CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent, vs. McDOUGALD, Appellant.

*May 7—June 3, 1924.*

*Commerce: Interstate shipments: What law governs: Accord and satisfaction: Consideration: Carriers: Delivery of goods without presentation of bill of lading: Liability of person to whom delivered.*

1. Matters involving the liability of a carrier for the misdelivery of an interstate shipment are governed by the federal statutes. p. 231.
2. An accord and satisfaction is a contract, and, like all other contracts, must be supported by a good or valuable consideration. p. 232.

3. One receiving a shipment of automobiles without surrendering the order bill of lading issued, and who gave a bond to indemnify the carrier against all possible damage, is liable to the carrier for depreciation in the value of one car which he allowed to be used pursuant to a supposed sale, when the carrier demanded redelivery of the cars.  p. 232.
4. Where the carrier was entitled to redelivery of the shipment in its original condition, or the full value thereof with costs, an agreement to repay freight, storage, and insurance charges to the person to whom the shipment had originally been delivered was without consideration and at most a *nudum pactum*.  p. 233.

APPEAL from a judgment of the circuit court for Polk county: W. R. FOLEY, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the plaintiff and against the defendant.

The Maxwell Motor Sales Company, a corporation at Detroit, Michigan, in the month of June, 1920, consigned four of its automobiles to the Maxwell Motor Sales Corporation at Clear Lake, Wisconsin, on an order bill of lading (notify *F. A. McDougald*).  The home of the Sales Corporation was also Detroit, Michigan, but it maintained a sales department at Minneapolis.  The Midland Motor Company, of Minneapolis, was the northwestern distributing agent for the Sales Corporation.  The defendant *McDougald,* for some years prior to the time in question, was the local agent of the Midland Motor Company for the sale of the Maxwell cars.  Upon the arrival of the cars at Clear Lake, *McDougald* not being in possession of the order bill of lading, the cars were delivered to him by the plaintiff upon the payment of the freight and the execution of a bond which in substance provided that, in consideration of the delivery of said automobiles to said defendant without the production or surrender of the bill of lading issued thereon, he agreed to indemnify the plaintiff from all loss, cost, and expense, including court costs and attorneys' fees, arising out of such delivery without the production or surrender of the bill of lading issued thereon.

The defendant claimed that upon arrival of the cars at Clear Lake he communicated by telephone with the manager of the Midland Motor Company and was instructed to receive the shipment, pay the freight, insure the cars, give the bond in question, and to hold the cars until further orders. Thereafter the defendant sold one of the cars to one of his employees, taking his notes therefor, but the Midland Motor Company, being notified of such sale and the terms thereof, repudiated the same and the car was again placed in storage with the other cars. Before such car was replaced by the purchaser it had been operated for over 2,000 miles. Defendant also testified that in the fall of the year the manager of the Sales Corporation called at Clear Lake and that he instructed the defendant to keep the cars until he received further orders.

In February, 1921, a claim was presented by the Sales Corporation, which held the order bill of lading, against the plaintiff for the value of the cars, and the plaintiff thereupon turned this claim over to its freight-claim office, and one Nordstrom, a clerk in such office, was instructed to look after the matter in order that the claim might be adjusted. When Nordstrom appeared at Clear Lake the defendant refused to deliver these cars unless he was paid the amount of the freight advanced by him, together with the amount of the storage and insurance of the cars. The evidence also shows that Nordstrom returned to Minneapolis, and, after some negotiations with his office and with the plaintiff, returned to Clear Lake. The defendant testified that upon meeting Nordstrom upon the occasion of his second visit, he expressly refused to deliver up these cars unless he were reimbursed for the amount paid for the freight, together with the storage charges; but that it having been represented to him that he would be liable for the damage done to one of the cars which had been used, he finally agreed to deliver these cars to the plaintiff, to be shipped to the Sales Corporation at Minneapolis, which held the order bill of lading.

The testimony of the defendant in this regard is corroborated by that of an employee.  On the other hand, such arrangement was denied by Nordstrom, and his testimony is also corroborated by the local agent of the company at Clear Lake.

The cars, however, were delivered to the company to be transported to the Sales Corporation, the consignee, at Minneapolis, and upon the arrival of such cars the manager of the Sales Corporation accepted the three unused cars but refused acceptance of the car that had been sold and used. Thereupon a representative of the plaintiff had the used car repaired and offered the same for sale at Minneapolis, and sold it for the best price obtainable, and thereupon paid the company the full invoice price, and the company thereafter began and prosecuted this action on the bond for the damage sustained by it.

The action was tried before the court with a jury, and the jury returned a special verdict in which it found that Nordstrom, the agent of the plaintiff, entered into an agreement with the defendant by the terms of which the defendant agreed to surrender the cars, with the understanding that the plaintiff would reimburse the defendant for the amount of the freight advanced by him, the defendant agreeing to waive his claim for storage and insurance.  In other words, the jury found that there was an accord and satisfaction duly executed between the plaintiff and the defendant.  Notwithstanding the verdict of the jury, the court on motion of the plaintiff ordered judgment against the defendant for the full amount of the damage sustained by it, less the amount of the freight which the defendant had advanced as aforesaid.  From such judgment the defendant has prosecuted this appeal.

For the appellant there was a brief by *Kennedy & Yates* of Amery, and oral argument by *W. T. Kennedy.*

Chicago, St. P., M. & O. R. Co. v. McDougald, 184 Wis. 227.

For the respondent there was a brief by *R. L. Kennedy*. and *G. F. Dames*, both of St. Paul, and *Bundy, Beach & Holland* of Eau Claire, and oral argument by *Mr. Dames*.

DOERFLER, J.   According to the testimony of the defendant he executed the bond in question, received the cars, and stored them under instructions received from his principal at Minneapolis.   The defendant at the time was not in possession of the order bill of lading and was not entitled to the possession of the cars.   The plaintiff parted with the possession by virtue of the bond.   Assuming the testimony of the defendant as true, his authority from his superior extended solely to the storage of the cars.   He had no authority to use them or sell them.   In violation of this limited authority one of the cars was sold and delivered to a purchaser, who greatly depreciated the value thereof by operating it a distance of over 2,000 miles.   The damage, therefore, to the used car is traceable solely to the unauthorized act of the defendant in violation of the instructions received from his superior.   But whatever authority and instructions the defendant had from his principal, the Midland Motor Company, the plaintiff was not a party thereto.   It was merely interested in transporting these cars as directed by the consignor and in delivering them to the person lawfully in possession of the order bill of lading. The defendant, not having in his possession such order bill of lading, executed the bond in question, and in delivering the cars to the defendant the plaintiff relied solely upon defendant's liability assumed by the execution of this bond. The bond itself was ironclad and the liability created thereunder was absolute, and the only risk assumed by the plaintiff in delivering the automobiles consisted in the defendant's solvency, with reference to which there was no doubt disclosed in the evidence.   The shipment was an interstate ship-

ment, and is governed by the provisions of the federal statutes.    See Barnes' Federal Code for 1919, sec. 7986. Such section provides:

*"Persons to whom carrier is justified in delivering.*—A carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is—

"(a)  A person lawfully entitled to the possession of the goods, or

"(b)  The consignee named in a straight bill for the goods, or

"(c)  A person in possession of an order bill for the goods, by the terms of which the goods are deliverable to his order; or which has been indorsed to him, or in blank by the consignee, or by the mediate or immediate indorsee of the consignee."

Sec. 7987 provides as follows:

*"Liability of carrier for misdelivery.*—Where a carrier delivers goods to one who is not lawfully entitled to the possession of them, the carrier shall be liable to any one having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by sub-divisions (b) and (c) of the preceding section; . . ."

The bill of lading upon the consignment of the goods was an order bill of lading, was negotiable, and named the Sales Corporation as the consignee.

An accord and satisfaction is a contract, and, like all other contracts, must be supported by a good or valuable consideration.    As above stated, the liability of the defendant was fixed by the bond.    He was liable in any event under the terms of the bond for any damage which the plaintiff might sustain by reason of delivery of the automobiles to him.    Under the provisions of the statutes above quoted, the liability of the plaintiff to the consignee was also absolute. The damage was liquidated, and, whether the alleged agreement found by the jury was entered into or not, the plaintiff received nothing further than what it was in any event entitled to.    There was therefore no consideration moving

from the defendant to the plaintiff to support such agreement, and the agreement at most was a mere *nudum pactum*. Plaintiff at all times was entitled to a return of the automobiles in their original condition, and could enforce such return by proper action; or, in the event of refusal, could recover the full value thereof, together with costs and expenses, or could accept part of the automobiles which were undamaged, and hold the defendant liable for damages to the injured automobile, together with costs and expenses. It was clothed with such authority by virtue of defendant's bond. When the damage became fixed and liquidated, and after it had paid the Sales Corporation the amount thereof, plaintiff was entitled to a full recovery from the defendant of the amount, and the defendant had no valid defense to such claim. In brief, the plaintiff received nothing in the transaction but what it was entitled to.

The learned circuit judge was therefore right in ordering judgment for the plaintiff, and such judgment must be affirmed.

*By the Court.*—Judgment affirmed.